

1   Hiba Enayat
    700 West E Street
2   Unit 1305
    San Diego, CA 92101
3   (415) 940-0723
    hiba.enayat@gmail.com
5
    PLAINTIFF IN PRO SE
6

7

8               UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF CALIFORNIA
9

10  HEATHER ENAYAT, AN            CASE NO.: 3:21-CV-00634
    INDIVIDUAL,

11        PLAINTIFF,              FIRST AMENDED COMPLAINT

12  v.

13  THE ELECTRA OWNERS
    ASSOCIATION, A DOMESTIC
14  NON-PROFIT CORPORATION;
    AND DOES 1 THROUGH 10,

15
    DEFENDANTS.
16        I, Hiba Enayat ("Heather") state, allege, and pray as follows:

17              PRELIMINARY STATEMENT

18  (1) Heather brings this action against the Electra Owners Association,

19  their agents, and appointees, (collectively, the "Electra") for violations of

20  the Title III of the ADA, 42 U.S.C. § 12101 *et seq.* (the "ADA"); for

**FILED**

Jun 7 2021

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY      s/ MelissaE        DEPUTY

1   violations of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* (the "FHA");

2   the California Fair Employment and Housing Act, Cal. Gov. Code

3   §12900 *et seq.* ("FEHA") , and the Unruh Civil Rights Act, Cal. Civ.

5   Code § 51 *et seq.* ("UNRUH").

6   (2) This is an action for declaratory judgment, seeking relief and money

7   damages against the Electra for their unreasonable, unlawful, and bad

8   faith actions, which undoubtedly constitute a breach of their obligations

9   to Heather under the Declaration of Covenants, Conditions, and

10   Restrictions of the Electra, and the Second Amended and Restated

11   Supplementary Declaration for the Electra ("Agreement"), attached

12   hereto as Exhibit "A."

13   (3) Heather owns a condominium within the Electra managed property.

14   (4) Electra discriminated against Heather and took punitive actions in

15   retaliation for Heather's requests for a reasonable accommodation and

16   complaints from Heather to county, state, and local officials. As a result,

17   Heather has suffered significant emotional and monetary damages.

18                                 JURISDICTION

19   (5) This Court has jurisdiction over this action pursuant to 28 U.S.C. §§

20   1331 and 1343 in that this is an action arising under the ADA and

1  FHA. This court also has supplemental jurisdiction over Plaintiff's

2  related claims arising under UNRUH pursuant to 28 U.S.C. § 1367(a).

3                              VENUE

5  (6) Venue is proper in this district under 28 U.S.C. § 1391 for several

6  reasons. Heather resides in this district. A substantial part of the

7  events or omissions giving rise to the claim occurred in this district. All

8  defendants are subject to personal jurisdiction in this district with

9  respect to this action; and there is no other district in which this action

10 may otherwise be brought.

11                              PARTIES

12 (7) Heather is an individual California National residing at her real

13 property located at 700 West E Street, Unit 1305, San Diego, CA

14 ("Property").

15 (8) Electra is a California Domestic Non-Profit Corporation with its

16 corporate office located at 15241 Laguna Canyon Rd, Irvine CA 92618.

17 Electra owns and operates the housing association where Property is

18 located and manages access to the public areas that surround the

19 Property.

20

1 (9) Heather sues fictitious defendants Does One through Ten, inclusive,

2 and each of them because their names and capacities or facts showing

3 them to be liable to Heather are not presently known.

5 (10) Heather sues Electra and Electra's agents individually and as the

6 agent and employee of every other defendant acting within the course

7 and scope of said agency with the knowledge and consent of the other.

8 (11) Heather believes Alicia ("Alicia") is an agent of Electra.

9 (12) Heather will seek leave to amend this complaint to reflect the true

10 names and capacities of such fictitious defendants when Heather knows

11 them.

12                                  FACTUAL ALLEGATIONS

13 (13) This action arises from the Electra Face Covering Policy and

14 practices in California that violate the ADA, the FHA, FEHA, and

15 UNRUH and their breach of the Agreement with Heather that requires

16 Electra to maintain access to her private dwelling and the public spaces

17 of the Electra condominium community (the "Common Areas").

18 (14) Electra recently adopted a rule that requires all residents to cover

19 their face in the Common Areas, with no exception for residents who

20

cannot cover their face for medical reasons (the Electra "Face Covering Policy").

(15) Heather is a person with a disability who has several health conditions that substantially limit her breathing and her respiratory and nervous systems, which are major life functions.

(16) Heather cannot wear a face covering without experiencing shortness of breath, heart palpitations, and extreme anxiety.

(17) A medical health professional has certified the conditions that prevent Heather from covering her face.

(18) Due to her disability, Heather is unable to use portions of her property not designated in compliance with applicable accessibility standards to accommodate for disabled persons who are not able to cover their face during their activities in the Common Areas.

(19) Electra's Face Covering Policy is in direct contradiction of the guidelines published by the Centers for Disease Control ("CDC") and the California Department of Public Health ("CDPH").

(20) The Property is a place of lodging located within the complex with more than four dwelling units.

1  (21) The property includes public accommodations, including, without

2  limitation, the hallways, stairs, elevators, sidewalks, the mailroom, the

3  parking structures, the conservatory, and other similar Common Areas.

5  (22) Electra denied Heather equal access the Common Areas.

6  (23) On Apr. 8, 2020, Heather received a notice from Electra stating

7  that all residents must wear a face covering in the Common Areas.

8  (24) Heather initially attempted to cover he face while in the Common

9  Areas, but she quickly found, due to the physical symptoms of her

10  disability, that she could not cover her face.

11  (25) On Jun. 29, 2020, the CDPH issued guidance for the use of face

12  coverings ("Guidance"). The Guidance specifically states that persons

13  with a medical condition, mental health condition, difficulty breathing,

14  or have a disability are exempt from the Guidance.

15  (26) The County of San Diego, Health and Human Services Agency

16  ("SDHHS") issued Emergency Regulations ("Order") on Sep. 25, 2020,

17  requiring face coverings to be worn as described and required by CDPH

18  Guidance which include the exceptions.

19  (27) CDC recommendations clearly state that face coverings should

20  NOT be worn by anyone who has trouble breathing, anyone who is

1 unconscious, incapacitated, or otherwise unable to remove the face

2 covering without assistance, however, the CDC exemptions are omitted

3 from Electra's Face Covering Policy.

5 (28) On or about June of 2020 Alicia threatened to report and did report

6 Heather to the Electra board for refusing to cover her face.

7 (29) On or about June of 2020 Electra board notified Heather she must

8 attend an Electra board hearing on Jul. 22, 2020.

9 (30) Because of the state emergency declaration due to coronavirus,

10 Electra held the meeting via zoom.us on Jul. 22, 2020 (Meeting).

11 (31) At the Meeting, Heather complained about the Face Covering

12 Policy, presented evidence of county and state exemptions and the

13 notice from Heather's doctor that Heather had a disability that affected

14 her ability to cover her face, and requested an accommodation.

15 (32) Electra found at the Meeting that the note was not specific enough

16 to exempt Heather from the Electra Face Covering Policy and ordered

17 Heather to cover her face in the Common Areas.

18 (33) The Meeting caused Heather stress and anxiety.

19 (34) Electra demanded Heather provide another note from her doctor,

20 and Heather requested that Electra assist with her costs for her doctor

1  to provide another note. Electra declined to assist in any of the costs

2  required to comply with the Face Covering Policy.

3  (35) Electra insisted Heather use a face covering as a reasonable

5  accommodation or submit another proposal for a different reasonable

6  accommodation.

7  (36) Heather submitted another, more detailed, doctor's note to Electra

8  and proposed that she be more physically distant, avoid elevators with

9  someone in it, try to take the stairs more often, limit checking mail to

10  once a week, try to use the mailroom when no one else is there, and

11  avoid the publicly accessed areas of the Common Areas.

12  (37) Electra accepted Heathers doctor's notice and proposal, and

13  Heather believed that the controversy over the Electra Face Covering

14  Policy had concluded.

15  (38) Electra's responded to Heather's objection of Electra's Face

16  Covering Policy and denied Heather's second accommodation request

17  because Heather had not provided information regarding the causal

18  connection between her disability and her request to not wear a face

19  covering.

20

(39) Alicia twice physically approached Heather on Sep. 4, 2020, and on Sep. 11, 2020, on one occasion challenging Heather's presence in an empty mail room. Heather felt scared, irritated, embarrassed, and panicked.

(40) Alicia maintained a physical distance to Heather of LESS THAN six feet.

(41) Heathers breathing rate increased, and she ran from the encounter.

(42) On or about Dec. 27, 2020, an unidentified neighbor accosted Heather in the elevators.

(43) Because Heather was not wearing a mask, Heather waved off the elevator.

(44) The neighbor invited Heather into the elevator.

(45) Heather took the elevator and when the doors closed the neighbor began screaming that Heather was the resident the board told him about that refused to wear a mask for her fake disability.

(46) The neighbor verbally abused Heather and assaulted Heather and Heather became frightened for her safety and experienced a panic attack.

(47) Heather reported the incident to the police. Electra made a report of the incident.

(48) Heather felt scared, irritated, embarrassed, and panicked.

(49) The Electra board also presented an amendment to the Agreement that releases Electra from liability from their mandates and demands that all their residents cover their face at all times.

(50) Heather opposed the amendment.

(51) The Electra also found that all residents must wear a face covering in the Common Areas or face a $1,000 USD penalty.

(52) Electra unlawfully coerced, intimidated, threatened, or interfered with Heather in the exercise or enjoyment of her property when they informed others in her community that Heather refused to cover her face.

(53) Heather began having other encounters with neighbors who would yell at her when they see her getting off an elevator or across the hall for no apparent reason. This had never happened before.

(54) Heather has information and believes that Electra has discussed Heather's medical disability and the details of her private medical condition with Heather's neighbors.

(55) Heather has information and believes that Electra discussed her conditions with her neighbors in an attempt to harass Heather which is retaliatory behavior.

(56) Electra's conduct included informing Heather's neighbors that Heather was faking an illness.

(57) Electra injured Heather by sharing Heather's personal medical information with other members of her community in retaliation.

(58) Electra's actions had a substantial discriminatory impact because they affected both Heather and others like Heather who are unable to cover their face for medical reasons.

(59) Electra's Face Covering Policy denies full and equal access to Common Areas to residents who are unable to cover their face due to a medical condition.

(60) The Electra Face Covering Policy caused Heather personal injury in violation of the FEHA, FHA, the ADA, and UNRUH.

(61) Electra's Face Covering Policy is in direct contradiction to the CDC recommendations, the Guidance, and the Order.

(62) Despite the Guidance, the Order and the CDC guidance to the contrary, Electra implemented policies and procedures that denied

1  entry to the Common Areas for residents who are disabled and cannot

2  wear a face covering.

3  (63) By implementing and enforcing policies more stringent than those

5  required by California and federal guidelines and recommendations,

6  Electra has excluded disabled people from its Common Areas because

7  their disabilities prevent them from wearing face coverings.

8  (64) By enacting their Face Covering Policy more stringent than the

9  state and federal orders and guidelines, Electra cannot assert such

10  local, state, and federal guidelines and recommendations as a defense to

11  justify policies that violate the ADA, the FHA, FEHA and UNRUH.

12  (65) Heather suffered damages from the embarrassment and

13  harassment of Electra by their flagrant violations of the ADA, the FHA,

14  FEHA and the UNRUH including, without limitation, the infliction of

15  emotional distress, which has further exacerbated her medical

16  disability that prevents her from covering her face.

17  (66) Electra provides segregated accommodations and services that

18  relegates persons with disabilities to the status of second-class citizens.

19  (67) Electra's places of public accommodation provide people with

20  disabilities with services, facilities, privileges, advantages or

accommodations that are not equal to or are different or separate from those provided to other individuals.

(68) The actions of the Electra, Electra's agents,' and unfriendly neighbors have harmed Heather to the extent that Heather no longer wishes to reside at Electra and wishes to sell the Real Property and relocate her residence.

COUNT ONE

Discrimination in Violation of the ADA, FHA, FEHA and UNRUH

(69) Heather re-alleges and incorporates by reference the allegations set forth in all paragraphs above, as if fully set forth herein.

(70) Heather seeks damages for violations of the Title III of the ADA, 42 U.S.C. § 12101 *et seq.*; for violations of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*; the California Fair Employment and Housing Act, Cal. Gov. Code §12900 *et seq.*, and the Unruh Civil Rights Act, Cal. Civ. Code § 51 *et seq.*

(71) Title III of the ADA, which applies to private entities including those with public accommodations such as Electra's Common Areas, establishes the general rule that no individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of

the goods, services, facilities, privileges, advantages or accommodations of any public accommodation.

(72) Portions of the Common Areas are open to the public and are therefore subject to the provisions of 42 U.S.C. 12181(7) in the ADA.

(73) Portions of the Common Areas open to the public include, without limitation, dining areas, pool, gym, mailroom, management offices, and paths, elevators, stairs, the conservatory which is rented out for weddings, and the parking garage.

(74) ADA discrimination includes a failure to provide services to a disabled person to the extent that such services are provided to non-disabled persons.

(75) Heather is a qualified individual with a disability within the meaning of 42 U.S.C. § 12111 of the ADA because she has a physical impairment that substantially limits one or more of her major life activities and causes her to have difficulties breathing and walking through the Common Areas of the Electra without a reasonable accommodation.

(76) Heather notified Electra about her disability and requested a reasonable accommodation for the Electra policy of mandatory face covering in the Electra Common Areas.

(77) Heather's request was reasonable and in accordance with the recommendations, orders and guidelines of the CDPH, the SDHHS and the CDC.

(78) The requested modifications would have allowed Heather to enjoy full and equal access to the Common Areas as provided to people who are not disabled and who are able to comply with the Face Covering Policy without potentially subjecting themselves to respiratory distress or other physical or mental injuries or ailments.

(79) Electra refused to engage in the interactive process and first denied Heather's request claiming that there are no exemptions, and then after Heather complained, provided doctors notes, and proposed alternate accommodations, Heather was denied and ordered to follow the Face Covering Policy or be fined.

(80) Electra also made discriminatory comments to Heather regarding Heather's disability and her request for a reasonable accommodation.

1  (81) Electra is in violation of the ADA because it discriminated against

2  Heather on the basis of her disabilities in the full and equal enjoyment

3  of the services, facilities, privileges, advantages or accommodations of

5  the Common Areas and ultimately her own Property.

6  (82) Electra denied Heather the services, facilities, privileges,

7  advantages and accommodations in the most integrated setting

8  appropriate to Heather's needs because it refused to modify its policies

9  and procedures to allow access to and enjoyment of the Common Areas

10  without wearing a face covering.

11  (83) Electra's current policies and practices have caused, are causing

12  and will continue to cause irreparable harm to Heather.

13  (84)  Heather did not then and does not now pose a exigent threat to the

14  health or safety of her neighbors.

15  (85) There was no significant risk to the health or safety of others if

16  Electra modified its policies, practices and procedures to accommodate

17  Heather.

18  (86) Social distancing, temperature checks and other safety precautions

19  in the Common Areas were in place or Electra could have easily put

20  them into place.

(87) Heather at no time had no signs or symptoms of any illness.

(88) Federal, state and county orders and guidelines all clearly state the need for a medical exemption from the requirement to wear a face covering.

(89) Electra refused to consider the need for an exemption to its face covering policies and procedures despite the fact that it had no basis to conclude that Heather was a direct threat to the health and safety of others.

(90) Electra made no individual professional assessments that considered Heather's actual abilities or disabilities, instead, Electra adopted a broad and discriminatory Face Covering Policy based on generalizations, stereotypes, and collectivist politics.

(91) As a result of Electra's unlawful discriminatory actions, Heather suffered harm including without limitation, emotional distress, loss of property value, a deteriorated health condition, and the costs of bringing this action calculated in an amount not less than $200,000.

(92) Because Electra intentionally violated Heather's rights with malice and reckless indifference they are, liable for punitive damages.

COUNT TWO

1      Retaliation in Violation of the ADA, FHA, FEHA and UNRUH

2  (93) Heather re-alleges and incorporates by reference the allegations set

3  forth in all paragraphs above, as if fully set forth herein.

5  (94) Heather alleges Electra used intimidation, harassment, or

6  interference stop Heather from exercising her rights to challenge the

7  Electra Face Covering Policy.

8  (95) Heather alleges that Electra's spreading of malicious rumors about

9  Heather has isolated Heather from her neighbors.

10  (96) Electra's retaliated against Heather by intimidating her,

11  threatening her unequally and Heather alleges that Electra spreading

12  of malicious rumors have forced Heather to flee from her Property and

13  put her Property up for sale.

14
15  (97) Less than two months after Heather complained of discrimination,

    Electra retaliated against Heather by proposing to enforce an
16
    amendment to their policy that if any one of the residents of the Electra
17
    did not follow the Face Covering Policy that they would be fined $1000.
18
    (98) Electra's harassment, and illegal policies and fining Heather is
19
    pretextual and baseless. Electra retaliated against Heather because she
20
    complained of Electra's disability discrimination.

(99) Electra created an environment for Heather at her Property and in the Common Areas that was so hostile that was so pervasive that it interfered with the use and enjoyment of her Property and the sale of her Property.

(100) As a result of Electra's unlawful discriminatory actions, Heather suffered harm including without limitation, emotional distress, loss of property value, a deteriorated health condition, and the costs of bringing this action calculated in an amount not less than $200,000.

(101) Because Electra intentionally and negligently violated Heather's rights with malice and reckless indifference they are liable for punitive damages.

## COUNT THREE

### Breach of Contractual Duty

(102) Heather re-alleges and incorporates by reference the allegations set forth in all paragraphs above, as if fully set forth herein.

(103) Electra has a contractual that refrains the Electra from stopping Heather from traveling to and from her property without discrimination, harassment, and intimidation.

(104) Electra's behavior has caused Heather to experience a loss of enjoyment and use of her Property because of the embarrassment and retaliation of the Electra.

(105) Electra has breached the duties imposed upon it by the Agreement.

(106) Electra's breach has resulted in damages to Heather, including without limitation, the inability of use and peaceful enjoyment of the property, physical, emotional and mental distress, and a deteriorated health condition calculated in an amount not less than $200,000.

COUNT FOUR

Negligence/Reckless Conduct

(107) Heather re-alleges and incorporates by reference the allegations set forth in all paragraphs above, as if fully set forth herein.

(108) Electra has a duty of care to Heather particularly after Electra, and specifically Alicia, informed Heather's neighbors of her medical conditions, which caused a danger to her health as set forth herein.

(109) The careless, negligent, and reckless conduct of Electra consisted of the following:

a. Forcing Heather to cover her face in the Common Areas, contrary to CDC, State and local guidance and orders;

b. Failing to have adequate policies and procedures in place to prevent employees from forcing disabled residents to cover their face when that might harm them;

c. Ignoring the recommendations and guidelines of the CDPH, SDHHS and the CDC regarding the use of masks and face coverings; and

d. Failing to exercise due care and caution for the rights, safety and well-being of Heather, as well as acting with wanton, willful and reckless disregard for the safety of the Heather.

(110) As a direct and proximate result of the aforementioned incident, which was caused by the reckless, careless and negligent conduct of Electra, Heather has suffered the following injuries damages and losses:

e. Pain, suffering and inconvenience;

f. Hypertension;

g. Headaches;

h. Shortness of breath;

21

i.  Exacerbation of underlying health issues;

j.  Depression;

k.  Loss of the ordinary pleasures of life; and

l.   anxiety, embarrassment, and humiliation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment as follows:

(1) Accept jurisdiction over this matter;

(2) Declare to Electra that persons who cannot wear a face covering due to medical reasons are exempt from the Electra Face Covering Policy;

(3) Declare that Electra must accommodate persons who cannot wear a face covering while traveling about the Common Areas due to a disability;

(4) Declare that the actions and omissions alleged herein are in violation of the ADA, FHA, FEHA, and UNRUH;

(5) Award injunctive relief requiring Electra to accommodate Heather by modifying its policies and procedures allowing Heather to move about in the Common Areas without wearing a face covering so that she may fully and equally enjoy the benefits, privileges, goods, services facilities, advantages and accommodations with her neighbors;

1 (6) Issue a preliminary and permanent injunction directing Electra to

2 end their discriminatory practices;

3 (7) Order Electra to take appropriate affirmative action to ensure

5 Electra and any of their agents, employees, or volunteers do not engage

6 in the activities complained of above again;

7 (8) Retain jurisdiction over Electra until such time as the Court is

8 satisfied that Electra's unlawful policies, practices, acts and omissions

9 complained of herein cannot recur;

10 (9) Award to Plaintiff all appropriate damages, including actual;

11 declaratory statutory; treble damages; and exemplary and punitive

12 damages, according to proof in an amount not less than $200,000;

13 (10) Award to Plaintiff expert witness fees pursuant to Gov. Code

14 §12989.2(a);

15 (11) Award to Plaintiff costs of suit; and

16 (12) Such other and further relief as the Court deems just and proper.

17 ## JURY AND FACT-FINDER DEMANDS

18 Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff

19 hereby demands a trial by jury as to all issues. Plaintiff does not

20

1 consent to assignment of this matter to a magistrate judge and

2 requests assignment to a United States District Judge.

3 VERIFICATION

5 I, the undersigned Plaintiff, Hiba Enayat declare under penalty

6 of perjury that the foregoing is true and correct.

7 Executed on this June 4, 2021, at Mohave County, Arizona.

8 Respectfully Submitted,
By: _____

9 Hiba Enayat
Plaintiff, in Pro Se.

10

11

12

13

14

15

16

17

18

19

20